UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GAHC4 SONGBIRD SNF PORTFOLIO, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MIDWEST HEALTH PROPERTIES, LLC; PETERSEN FARMER CITY, LLC; PETERSEN HEALTH CARE III, LLC; PETERSEN HEALTH CARE VIII, LLC; PETERSEN HEALTH CARE XI, LLC; PETERSEN HEALTH CARE XII, LLC; PETERSEN HEALTH CARE XIII, LLC; PETERSEN HEALTH GROUP, LLC; ROBINGS, LLC; PETERSEN HEALTH CARE II, INC.; MIDWEST HEALTH OPERATIONS, LLC; PETERSEN HEALTH & WELLNESS, LLC; PETERSEN HEALTH BUSINESS, LLC; PETERSEN HEALTH CARE-FARMER CITY, LLC; PETERSEN HEALTH CARE VII, LLC; PETERSEN HEALTH QUALITY, LLC; and MARK B. PETERSEN, as GUARANTOR. <br><br> Defendants. | Civil Action No. 19-cv-7310 |

## COMPLAINT

Plaintiff GAHC4 Songbird SNF Portfolio, LLC ("Griffin") files this Complaint against Midwest Health Properties, LLC, Petersen Farmer City, LLC, Petersen Health Care III, LLC, Petersen Health Care VIII, LLC, Peterson Health Care XI, LLC, Petersen Health Care XII, LLC, Petersen Health Care XIII, LLC, Petersen Health Group, LLC, Robings, LLC, Petersen Health Care II, Inc., Midwest Health Operations, LLC, Petersen Health & Wellness, LLC, Petersen Health Business, LLC, Petersen Health Care – Farmer City, LLC, Petersen Health Care VII, LLC,

222631997.v1

Petersen Health Quality, LLC, and Mark B. Petersen, individually as guarantor, (collectively, the "Defendants") showing the Court as follows:

### INTRODUCTION

1. The present dispute arises out of Defendants' failure to fulfill certain conditions precedent to closing of its sale of twenty-four (24) health, rehabilitation, and nursing centers located in Illinois and Missouri to Plaintiff. Despite numerous extensions to the closing date so that Defendants could satisfy these conditions, Defendants ultimately did not meet their obligations under the Purchase and Sale Agreement, dated as of July 24, 2018, among Defendants, as sellers, and Plaintiff, as purchaser (the "Initial PSA", as amended, the "PSA"). As a result of Defendants' failures, Griffin exercised its unconditional right to terminate the PSA prior to the closing date established by the PSA. Subsequently, Griffin demanded, pursuant to the PSA, reimbursement of all "Buyer Reimbursable Costs" (a term defined in the PSA) in the amount of $1,257,439.11. Defendants failed to pay Griffin its Buyer Reimbursable Costs thereby breaching their obligations under the PSA. Accordingly, Griffin seeks a judgment from this Court against Defendants for all Buyer Reimbursable Costs plus attorneys' fees and expenses in amount to be proven at trial.

### PARTIES

2. Griffin is a limited liability company organized under the laws of the State of Delaware with its principal place of business located Irvine, California. Griffin's sole member is Griffin-American Healthcare REIT IV Holdings, LP ("Griffin LP"). Griffin LP is a limited partnership organized under the laws of the State of Delaware. Griffin LP's sole partner is Griffin-American Healthcare REIT IV, Inc. ("Griffin REIT"). Griffin REIT is a Maryland corporation with its registered office located at 7 St. Paul Street, Suite 820, Baltimore, Maryland 21202 and its

principal place of business located at 18191 Von Karman Avenue, Suite 300, Irvine, California 92612.

3. Defendant Midwest Health Properties, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Midwest Health Properties, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Midwest Health Properties, LLC's sole member-owner is Mark B. Petersen, an Illinois citizen.

4. Defendant Petersen Farmer City, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Farmer City, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Farmer City, LLC's sole member-owner is Mark B. Petersen, an Illinois citizen.

5. Defendant Petersen Health Care III, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Care III, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health Care III, LLC's sole member-owner is Mark B. Petersen, an Illinois citizen.

6. Defendant Petersen Health Care VIII, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Care VIII, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health Care VIII, LLC's sole member-owner is Mark B. Petersen, an Illinois citizen.

7. Defendant Petersen Health Care XI, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Care XI, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health Care XI, LLC's sole member-owner is Mark B. Petersen, an Illinois citizen.

8. Defendant Petersen Health Care XII, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Care XII, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health Care XII, LLC's sole member-owner is Mark B. Petersen, an Illinois citizen.

9. Defendant Petersen Health Care XIII, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Care XIII, LLC can be served with process through its

registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health Care XIII, LLC's sole member-owner is Mark B. Petersen, an Illinois citizen.

10. Defendant Petersen Health Group, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Group, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health Group, LLC has two member-owners: Mark B. Petersen, an Illinois citizen, and MBP Partner, LLC. Upon information and belief, MBP Partner, LLC has one member and is wholly owned by Mark B. Petersen.

11. Robings, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Robings, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Robings, LLC's sole member-owner is Mark B. Petersen, an Illinois citizen.

12. Defendant Petersen Health Care II, Inc. is an Illinois corporation with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Care II, Inc. can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614.

13. Defendant Midwest Health Operations, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W.

Trailcreek Drive, Peoria, Illinois 61614. Midwest Health Operations, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Midwest Health Operations, LLC's sole member-owner is Mark B. Petersen, an Illinois citizen.

14. Defendant Petersen Health & Wellness, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health & Wellness, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health & Wellness, LLC has two member-owners: Mark B. Petersen, an Illinois citizen, and MBP Partner, LLC. Upon information and belief, MBP Partner, LLC has one member and is wholly owned by Mark B. Petersen.

15. Defendant Petersen Health Business, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Business, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health Business, LLC has two member-owners: Mark B. Petersen, an Illinois citizen, and MBP Partner, LLC. Upon information and belief, MBP Partner, LLC has one member and is wholly owned by Mark B. Petersen.

16. Defendant Petersen Health Care – Farmer City, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Care – Farmer City, LLC can be served

6

with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health Care – Farmer City, LLC's sole member-owner is Mark B. Petersen, an Illinois citizen.

17. Defendant Petersen Health Care VII, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Care VII, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health Care VII, LLC's sole member is Mark B. Petersen, an Illinois citizen.

18. Defendant Petersen Health Quality, LLC is a limited liability company organized under the laws of the State of Illinois with its principal office located at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Petersen Health Quality, LLC can be served with process through its registered agent, Marikay L. Snyder, at 830 W. Trailcreek Drive, Peoria, Illinois 61614. Upon information and belief, Petersen Health Quality, LLC has two member-owners: Mark B. Petersen, an Illinois citizen, and MBP Partner, LLC. Upon information and belief, MBP Partner, LLC has one member and is wholly owned by Mark B. Petersen.

19. Mark B. Petersen is an Illinois citizen residing at 5042 North Prospect Road, Peoria Heights, Illinois 61616

## VENUE AND JURISDICTION

20. This Court has subject matter jurisdiction over the present dispute pursuant to 28 U.S.C. § 1332, because Griffin, and each of its members, are citizens of different states than

Defendants, and each of their members and the amount in controversy exceeds $75,000. As set forth more fully above, Griffin's indirect sole owner is a citizen of Maryland and California. Defendants and each of their members are all Illinois citizens.

21. Defendants consented to personal jurisdiction in this forum in the PSA. A true and correct copy of the Initial PSA is attached hereto as Exhibit A.

22. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and 1404(a) because Defendants consented to venue in this Court under the PSA and because Defendants' contacts with this district, including but not limited to consenting to personal jurisdiction here, are sufficient to subject them to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

23. Griffin and Defendants executed the Initial PSA effective as of July 24, 2018.

24. Pursuant to the PSA, Defendants were, among other things, to transfer ownership of twenty-four (24) health, rehabilitation, and nursing centers located in and around Illinois and Missouri to Griffin for the purchase price of $78,100,000.

25. Section 13 of the PSA obligated Defendants at or before closing to meet certain conditions. Of relevance to this dispute, were the following conditions:

> (l) Buyer shall have received evidence reasonably satisfactory to it demonstrating that the average cumulative census per patient/resident days for all of the Facilities during the six (6) month period preceding Closing, calculated in the aggregate based upon a possible total of 660,285 annual patient days (which total is calculated by multiplying (i) the number of 1,809 licensed beds currently in operation by (ii) 365 days) is not less than seventy percent (70%), as compared to the Current Census (defined in Section 11(d)(iv));

8

(m) Buyer shall have received evidence reasonably satisfactory to Buyer that the annualized Facility EBITDAR (as said term is defined in the Master Lease attached as an exhibit to this Agreement, and which definition imputes a five percent (5%) management fee, among other assumptions) for all Facilities (computed in the aggregate on a trailing basis for the six (6) month period preceding Closing) is not less than $10,700,000.00;

(n) Buyer shall have received evidence reasonably satisfactory to Buyer that the average cumulative revenue for all Facilities (computed on a trailing basis for the six (6) month period preceding Closing) deriving from Medicaid does not exceed seventy percent (70%);

26. The PSA provided that, if Defendants failed to satisfy any of the conditions set forth in Section 13, Griffin could choose to waive those conditions, extend closing, or terminate the PSA.

27. The PSA also provided that, if certain specified conditions were not met and Griffin terminated the PSA, "Seller shall reimburse Buyer for all reasonable and documented costs and expenses incurred by Buyer in connection with the negotiation and performance of this Agreement and the proposed acquisition of the Property and the Operating Assets, including without limitation Buyer's due diligence investigations of the Property and Operating Assets, title insurance company charges, survey charges, third-party diligence reports, attorneys' fees and other out-of-pocket costs..." (collectively, the "Buyer Reimbursable Costs").

28. Pursuant to the PSA, Defendant Mark B. Petersen, who joined in the execution of the PSA, agreed unconditionally to irrevocably guaranty "each and every representation, warranty, covenant, agreement, and obligation of the Seller Parties and the full and timely performance by the Seller Parties, and each of them, of their obligations under this Agreement and the documents executed by each of them in connection herewith [ ]."

9

29. Once the Initial PSA was fully executed, Griffin was permitted under its terms to conduct due diligence investigations of the subject property and related matters during a designated diligence period (the "Due Diligence Period").

30. The PSA also established that the closing was to take place thirty (30) days after the Due Diligence Period had ended, subject to the satisfaction of certain stated conditions precedent.

31. On September 4, 2018, Griffin and Defendants executed the First Amendment to Purchase and Sale Agreement, which, among other things, extended the Due Diligence Period through and including September 14, 2018. A true and correct copy of the First Amendment is attached hereto as Exhibit B.

32. On September 13, 2018, Griffin and Defendants executed the Second Amendment to Purchase and Sale Agreement, which extended the Due Diligence Period through and including September 21, 2018. A true and correct copy of the Second Amendment is attached hereto as Exhibit C.

33. On September 21, 2018, Griffin and Defendants executed the Third Amendment to Purchase and Sale Agreement, which extended the Due Diligence Period through and including September 28, 2018. A true and correct copy of the Third Amendment is attached hereto as Exhibit D.

34. On September 28, 2018, Griffin and Defendants executed the Fourth Amendment to Purchase and Sale Agreement, which extended the Due Diligence Period through and including October 5, 2018. A true and correct copy of the Fourth Amendment is attached hereto as Exhibit E.

35. On October 5, 2018, Griffin and Defendants executed the Fifth Amendment to Purchase and Sale Agreement, which extended the Due Diligence Period through and including October 9, 2018. A true and correct copy of the Fifth Amendment is attached hereto as Exhibit F.

36. On October 9, 2018, the Due Diligence Period ended.

37. Also on October 9, 2018, Griffin and Defendants executed the Sixth Amendment to Purchase and Sale Agreement. A true and correct copy of the Sixth Amendment is attached hereto as Exhibit G.

38. The Sixth Amendment modified, among other things, Section 13 of the Initial PSA, adding the following, relevant obligations as conditions to Griffin's obligations to complete the closing:

> [(q)] <u>Federal Tax Liens.</u> On the Closing Date, Sellers shall direct the Title Company to pay a portion of the Purchase Price directly to the United States Department of the Treasury – Internal Revenue Service (the "IRS") towards the payment of all outstanding and unpaid federal taxes (including interest and penalties for the period through the Closing Date) assessed against each Seller Party (and if such Seller Party is a disregarded entity, its parent entity) (collectively, the "Federal Taxes"), including, without limitation, those set forth in the Notices of Federal Tax Liens set forth on Schedule E attached to this Amendment. Prior to Closing, Sellers shall obtain and deliver to Purchaser such official documentation for the payoff of such Federal Taxes in form and substance reasonably required by Purchaser. In addition, Sellers shall obtain and deliver such official documentation from the IRS in form and substance reasonably required by the Title Company for the release and satisfaction of all liens for Federal Taxes affecting the Properties. A breach by Sellers of this Section 4 shall be a default and, subject to the notice and cure period set forth in Section 9(b) of the PSA, shall entitle Purchaser to the remedies set forth in Section 9(b) of the PSA.
>
> [(r)] <u>Bulk Sales Liabilities.</u> On or before the Closing Date, the Seller Parties shall pay (i) to the State of Illinois Department of Revenue (the "IDR") the amount of all outstanding and unpaid liabilities owed by Sellers to the IDR through the Closing Date and

11

        (ii) to the Illinois Department of Employment Security (the "IDES") the amount of all outstanding and unpaid contributions, penalties and interest owed by the Existing Operators to the IDES through the Closing Date. Prior to Closing, Sellers shall obtain and deliver to Purchaser (with copies to the Title Company), in accordance with the laws of the State of Illinois (including the requirements of the IDR and IDES, as applicable), all "releases of bulk sale stop orders" or "clearance certificates" (collectively, the "Clearance Certificates") with respect to the IDR bulk sale stop orders and IDES account status notifications evidencing the payment by each Seller Party of all liabilities owed by the Seller Parties through the Closing Date, each in form and substance reasonably required by Purchaser. In addition, prior to Closing, Sellers shall obtain and deliver such official documentation from the IDR and the IDES in form and substance reasonably required by the Title Company for the release and satisfaction of all liens in favor of IDR and IDES affecting the Properties. A breach by Sellers of this Section 5 shall be a default and, subject to the notice and cure period set forth in Section 9(b) of the PSA, shall entitle Purchaser to the remedies set forth in Section 9(b) of the PSA.

39. The Sixth Amendment also modified Section 13 to grant Griffin the right to collect Buyer Reimbursable Costs if the conditions established in subsections (q) and (r), above were not satisfied.

40. On December 17, 2018, Griffin and Defendants executed the Seventh Amendment to Purchase and Sale Agreement. A true and correct copy of the Seventh Amendment is attached hereto as Exhibit H.

41. On December 20, 2018, Griffin exercised its right under the PSA to delay the closing date until January 15, 2019, because Defendants had not yet satisfied many of the closing conditions.

42. On January 16, 2018, Griffin again exercised its right under the PSA to delay the closing date until February 14, 2019 for the same reason.

43. On February 14, 2019, Griffin and Defendants executed the Eighth Amendment to Purchase and Sale Agreement, which extended closing to April 1, 2019, because Defendants still had not satisfied many of the closing conditions.

44. The Eighth Amendment also provided, in part:

> 2. <u>Open Conditions.</u> The Seller Parties, Tenant and Guarantor hereby acknowledge and agree that several of the conditions to Buyer's obligations to close have not been satisfied as of the date hereof (such conditions, the "Open Conditions"). Furthermore, the Seller Parties, Tenant and Guarantor hereby acknowledge that, (x) in lieu of entering into this Amendment to extend the Closing Date, Buyer had the right to terminate the PSA pursuant to Section 13 thereof due to the failure of the Open Conditions to be satisfied as of the Second Target Closing Date, and (y) in such case, Buyer would have been entitled to a refund of the Deposit and reimbursement of all reasonable and documented costs and expenses incurred by Buyer in connection with the negotiation and performance of the PSA and the proposed acquisition of the Property and the Operating Assets as more particularly set forth in Section 13 of the PSA [ ].
> ...
>
> 4. <u>Termination Right.</u> Notwithstanding Buyer's election to suspend the Closing Date until the New Target Closing Date or anything to the contrary set forth in the PSA, Buyer shall have the right, in its sole and absolute discretion, to immediately terminate the PSA by giving written notice to Seller at any time on or prior to the New Target Closing Date (the "Termination Right"). Upon such termination of the PSA, Buyer shall be entitled to a refund of the Deposit and reimbursement of the Buyer Reimbursable Costs, and all obligations, liabilities, and rights of the parties under the PSA shall terminate. For the avoidance of doubt, in no event shall the Seller Parties, Tenant or Guarantor be entitled to any notice, cure and/or grace period in connection with Buyer's exercise of the Termination Right.

A true and correct copy of the Eighth Amendment is attached hereto as Exhibit I.

45. On April 1, 2019, Griffin and Defendants executed the Ninth Amendment to Purchase and Sale Agreement, which extended the closing date to August 1, 2019. A true and correct copy of the Ninth Amendment is attached hereto as Exhibit J.

46. Due to the fact that Defendants had not satisfied several conditions precedent to Griffin's obligation to complete the closing after many extensions, Griffin exercised its unconditional right to terminate the PSA on May 10, 2019. A true and correct copy of the May 10, 2019 termination letter is attached hereto as Exhibit K.

47. On May 24, 2019, Griffin sent Defendants a demand letter requesting payment of the Buyer Reimbursable Costs in the amount of $1,257,439.11, together with a detailed accounting for such costs. A true and correct copy of the May 24, 2019 letter is attached hereto as Exhibit L.

48. By letter dated June 14, 2019, Defendants declined to pay any of the Buyer Reimbursable Costs that were due and owing.

49. Griffin has suffered damages as a direct and proximate result of Defendants' failure to pay Buyer Reimbursable Costs.

50. Section 13 of the PSA also provides a mandatory award of attorneys' fees and costs to the prevailing party in any dispute arising from the PSA.

51. Griffin is entitled to its attorneys' fees, costs, and expenses associated with bringing this action against Defendants in an amount to be proven at trial.

COUNT I — BREACH OF CONTRACT AGAINST
MIDWEST HEALTH PROPERTIES, LLC, PETERSEN FARMER CITY, LLC,
PETERSEN HEALTH CARE III, LLC, PETERSEN HEALTH CARE VIII, LLC,
PETERSON HEALTH CARE XI, LLC, PETERSEN HEALTH CARE XII, LLC,
PETERSEN HEALTH CARE XIII, LLC, PETERSEN HEALTH GROUP, LLC,
ROBINGS, LLC, PETERSEN HEALTH CARE II, INC., MIDWEST HEALTH
OPERATIONS, LLC, PETERSEN HEALTH & WELLNESS, LLC, PETERSEN
HEALTH BUSINESS, LLC, PETERSEN HEALTH CARE – FARMER CITY, LLC,
<u>PETERSEN HEALTH CARE VII, LLC, AND PETERSEN HEALTH QUALITY, LLC</u>

52. Griffin incorporates the allegations in paragraphs 1 to 51 as if those allegations were re-alleged in full here.

53. The PSA obligated Defendants Midwest Health Properties, LLC, Petersen Farmer City, LLC, Petersen Health Care III, LLC, Petersen Health Care VIII, LLC, Peterson Health Care XI, LLC, Petersen Health Care XII, LLC, Petersen Health Care XIII, LLC, Petersen Health Group, LLC, Robings, LLC, Petersen Health Care II, Inc., Midwest Health Operations, LLC, Petersen Health & Wellness, LLC, Petersen Health Business, LLC, Petersen Health Care – Farmer City, LLC, Petersen Health Care VII, LLC, and Petersen Health Quality, LLC to reimburse Griffin for all Buyer Reimbursable Expenses upon Griffin's termination of the PSA.

54. Defendants Midwest Health Properties, LLC, Petersen Farmer City, LLC, Petersen Health Care III, LLC, Petersen Health Care VIII, LLC, Peterson Health Care XI, LLC, Petersen Health Care XII, LLC, Petersen Health Care XIII, LLC, Petersen Health Group, LLC, Robings, LLC, Petersen Health Care II, Inc., Midwest Health Operations, LLC, Petersen Health & Wellness, LLC, Petersen Health Business, LLC, Petersen Health Care – Farmer City, LLC, Petersen Health Care VII, LLC, and Petersen Health Quality, LLC refused to do so and, therefore, breached their obligations to pay Griffin all Buyer Reimbursable Costs following Griffin's termination of the PSA on May 10, 2019.

15
222631997.v1

55. As a direct and proximate cause of that failure, Griffin has suffered damages in the amount of $1,257,439.11.

## COUNT II — BREACH OF CONTRACT (GUARANTY) AGAINST
## MARK B. PETERSEN

56. Griffin incorporates the allegations in paragraphs 1 to 51 as if those allegations were re-alleged in full here.

57. Defendant Mark B. Petersen guaranteed all representations and obligations of the Midwest Health Properties, LLC, Petersen Farmer City, LLC, Petersen Health Care III, LLC, Petersen Health Care VIII, LLC, Peterson Health Care XI, LLC, Petersen Health Care XII, LLC, Petersen Health Care XIII, LLC, Petersen Health Group, LLC, Robings, LLC, Petersen Health Care II, Inc., Midwest Health Operations, LLC, Petersen Health & Wellness, LLC, Petersen Health Business, LLC, Petersen Health Care – Farmer City, LLC, Petersen Health Care VII, LLC, and Petersen Health Quality, LLC arising under the PSA, including the obligation to pay Buyer Reimbursable Expenses.

58. Following Griffin's demand, Defendant Mark B. Petersen has failed to pay Griffin all Buyer Reimbursable Expenses.

59. As a direct and proximate cause of that failure, Griffin has suffered damages in the amount of $1,257,439.11.

222631997.v1

## COUNT III — ATTORNEYS' FEES

60. Griffin incorporates the allegations in paragraphs 1 to 51 as if those allegations were re-alleged in full here.

61. Section 13, among other provisions, of the PSA provides that a prevailing party is entitled to its attorneys' fees and costs associated with bringing an action to enforce the other parties' obligations arising thereunder.

62. As a result of Defendants' breaches of the PSA, namely the requirement to pay all Buyer Reimbursable Costs, Griffin is entitled to recover all of its attorneys' fees and costs associated with bringing this action.

## PRAYER

WHEREFORE Griffin prays that all Defendants be held jointly and severally liable to Griffin in the amount of $1,257,439.11 plus all interest that has accrued at the applicable legal rate, costs, attorneys' fees, and all other remedies this Court deems just.

Respectfully submitted,

CLARK HILL PLC

/s/ William G. Sullivan
William G. Sullivan (ARDC #2773538)
Michael P. Croghan (ARDC #6312601)
130 East Randolph Street | Suite 3900
Chicago, Illinois 60601
T: (312) 985-5900 | F: (312) 985-5999
E-mail: wsullivan@ClarkHill.com
mcroghan@ClarkHill.com

222631997.v1

ARNALL GOLDEN GREGORY LLP

/s/ Samuel M. Lyddan
David J. Marmins (*pro hac vice* application forthcoming)
Georgia Bar No. 470630
Samuel M. Lyddan (*pro hac vice* application forthcoming)
Georgia Bar No. 544484
171 17th Street NW
Suite 2100
Atlanta, Georgia  30363
T:  (404) 873-8700 | (F):  404-873-8701
E-mail  David.Marmins@agg.com
           Samuel.Lyddan@agg.com