**GAHC4 SONGBIRD SNF PORTFOLIO, LLC**

v.

**MIDWEST HEALTH PROPERTIES, LLC; PETERSEN FARMER CITY, LLC;
PETERSEN HEALTH CARE III, LLC; PETERSEN HEALTH CARE VIII, LLC;
PETERSEN HEALTH CARE XI, LLC; PETERSEN HEALTH CARE XII, LLC;
PETERSEN HEALTH CARE XIII, LLC; PETERSEN HEALTH GROUP, LLC;
ROBINGS, LLC; PETERSEN HEALTH CARE II, INC.; MIDWEST HEALTH
OPERATIONS, LLC; PETERSEN HEALTH & WELLNESS, LLC; PETERSEN
HEALTH BUSINESS, LLC; PETERSEN HEALTH CARE-FARMER CITY, LLC;
PETERSEN HEALTH CARE VII, LLC; PETERSEN HEALTH QUALITY, LLC; and
MARK B. PETERSEN, as GUARANTOR**

# EXHIBIT B TO COMPLAINT

**FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT**

THIS FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT (this "Amendment") is entered into effective as of September 4, 2018, by and among (i) the "Sellers" identified on the signature pages attached hereto (each a "Seller", and together, "Sellers"), (ii) the "Existing Operators" identified on the signature pages attached hereto (each an "Existing Operator", and together, "Existing Operators"), and (iii) GAHC4 Songbird SNF Portfolio, LLC, a Delaware limited liability company ("Purchaser" and, together with Sellers and Existing Operators, the "Parties", and each, a "Party").

WHEREAS, the Parties entered into that certain Purchase and Sale Agreement dated as of July 24, 2018 (the "PSA"); and

WHEREAS, the Parties desire to amend the PSA in accordance with the terms of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.      Defined Terms. All capitalized terms used and not defined herein shall have the meanings given to such terms in the PSA.

2.      Due Diligence Period. The "Due Diligence Period", as defined in Section 1(f) of the PSA, is hereby extended so that the Due Diligence Period shall expire at 5:00 p.m. (Pacific Time) on September 14, 2018. All references in the PSA to the Due Diligence Period shall mean the Due Diligence Period as extended by this Amendment.

3.      Form of Master Lease. The following Sections of and Schedules to the form of Master Lease attached to the PSA as Exhibit F are modified as shown on Schedule 1 attached to this Amendment: Section 9.1; Sections 12.1(k), (l) and (p); Sections 19.1(a) and (b); Section 21.24(b); and Schedule D (only as to the definition of the term "Land"). Additionally, Schedule F of the Master Lease (Form of Guaranty) is hereby deleted and replaced with the Schedule F attached to this Amendment.

4.      Ratification. Except as expressly modified hereby, the terms of the PSA are hereby ratified and shall remain in full force and effect, enforceable in accordance with its terms.

5.      Execution. This Amendment may be executed in a number of identical counterparts. Signatures may be delivered by facsimile or electronic delivery, and such signatures shall be binding on the parties hereto, with original signatures to be delivered as soon as reasonably practical thereafter.

[Remainder of page intentionally left blank.]

12573432v2

NOW, THEREFORE, the parties hereto have executed this Amendment as of the date first set forth above.

**SELLERS**:

Midwest Health Properties, LLC
Petersen - Farmer City, LLC
Petersen Health Care III, LLC
Petersen Health Care VIII, LLC
Petersen Health Care XI, LLC
Petersen Health Care XIII, LLC
Petersen Health Group, LLC
Petersen Health Care XII, LLC
Robings, LLC

Each an Illinois limited liability company

For each, by: _____

Name: Mark B. Petersen
Title: Manager

Petersen Health Care II, Inc.

By: _____
Name: Mark B. Petersen
Title: President

The remainder of this page is intentionally blank. Signatures follow on the next page.

**<u>EXISTING OPERATORS</u>**:

Midwest Health Operations, LLC
Petersen Health & Wellness, LLC
Petersen Health Business, LLC
Petersen Health Care - Farmer City, LLC
Petersen Health Care VII, LLC
Petersen Health Group, LLC
Petersen Health Quality, LLC

Each an Illinois limited liability company

For each, by: _____
Name:  Mark B. Petersen
Title:   Manager


Petersen Health Care II, Inc.

By: _____
Name:  Mark B. Petersen
Title:   President


The remainder of this page is intentionally blank.  Signatures follow on the next page

12573432v2

**<u>PURCHASER</u>:**

GAHC4 Songbird SNF Portfolio, LLC,
a Delaware limited liability company

By: _____
Name:  Danny Prosky
Title:   Authorized Signatory

S-4

Schedule 1

Section 9.1

duties, obligations and covenants under this Lease, (2) the transferee shall be required to execute and deliver an assumption of all obligations of Tenant hereunder that are applicable to such Transfer, pursuant to an instrument satisfactory to Landlord, and (3) the Transfer shall be conditioned upon obtaining and securing (A) all necessary Health Care Licenses and other approvals and consents of Governmental Authorities at no expense to the Landlord and (B) the consent of any Mortgagee, which consent may be withheld in Mortgagee's sole discretion. Occupancy of individual rooms or beds by bona fide patients of a Facility in the ordinary course of business shall not be considered a "Sublease" for purposes of this Article 9.  Notwithstanding any provision of this Lease to the contrary, there shall be no assignment of this Lease with respect to less than the entire Premises.  Nothing in this Section 9.1 shall limit or restrict Guarantor from transferring or disposing of assets owned by Guarantor, so long as Tenant and Guarantor shall at all times during the Term continue to satisfy the financial covenants set forth in Section 21.24(b).

[Notwithstanding the foregoing, Guarantor may, with the prior written consent of Landlord, which consent ~~Landlord may withhold in its reasonable discretion, to Transfer~~shall not be unreasonable withheld, assign the liabilities and obligations created under the Guaranty to a trust created for the benefit of Guarantor and controlled solely by Guarantor ("**Trust**") or to a corporation, partnership or limited liability company owned ~~or~~and controlled (with the term "control" having the meaning given to such term in this Section 9.1) solely by Guarantor ("**Corporate Guarantor**"), provided that such Trust or Corporate Guarantor satisfies the financial covenants set forth in Section 21.24(b) below.~~]~~ **[DRAFTING NOTE: *this section remains open and subject to further negotiation and agreement by the parties*,** as well as the following criteria: (i)  the results of a background and credit check on the assignee, its officers, directors, owners and principals are reasonably acceptable to Landlord, (ii) verification to the reasonable satisfaction of Landlord of no prior history on the part of said persons and entities or their respective affiliates of a revocation, termination, suspension, decertification or other loss of any Health Care License or Provider Agreement, (iii) verification to the reasonable satisfaction of Landlord that neither said assignment nor the proposed assignee Trust or Corporate Guarantor is reasonably likely to materially and adversely affect the status of Landlord or any of its Affiliates as a REIT, or to cause the rent paid hereunder to fail to qualify as "rents from real property" within the meaning of Section 856(d) of the Code, and (iv) Landlord reasonably determines that the assignee is capably of complying with the obligations under Section 19.3 of this Lease.]

**Section 9.2**    Request for Consent. If Tenant requests Landlord's or any Mortgagee's consent to a Transfer, Landlord and such Mortgagee shall be given not less than fifteen (15) business days' advance written notice of the proposed Transfer, which notice shall be delivered to Landlord and such Mortgagee together with (i) a true and complete copy of the proposed instrument(s) of the Transfer, and (ii) such other information and documents as Landlord or such Mortgagee may request in its reasonable discretion. Tenant shall pay, on demand, Landlord's and such Mortgagee's reasonable costs and expenses in connection with their consideration of whether to grant any such consent to a Transfer.  No Transfer may be proposed or consummated during the continuance of a Default or an Event of Default.

**Section 9.3**    Nature of Consent.  Any consent by Landlord under this Article 9 shall apply only to the specific transaction thereby authorized and shall not relieve Tenant from the

- 30 -

12277199v9

Section 12.1(k), (l) and (p)

(g)  Tenant shall desert, vacate or fail, or fail to cause a Subtenant, to physically occupy any portion of the Premises for a period of thirty (30) consecutive days, excluding a permitted closure permitted under this Lease and destruction of the Premises or the Premises for a particular Facility prior to completion of the Restoration, and condemnation of the Premises or the Premises for a particular Facility, to the extent that Tenant must wholly or partially vacate the Premises to effect a Restoration.

(h)  If (i) Tenant or Guarantor shall commence any case, proceeding or other action (A) under any existing or future Applicable Law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have an order for relief entered with respect to Tenant, or seeking to adjudicate Tenant a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution, composition or other relief with respect to Tenant or Tenant's debts, or (B) seeking appointment of a receiver, trustee, custodian or other similar official for Tenant or for all or any substantial part of Tenant's property; or (ii) Tenant or Guarantor shall become insolvent or make a general assignment for the benefit of Tenant's creditors or shall make a transfer in fraud of creditors; or (iii) there shall be commenced against Tenant or Guarantor any case, proceeding or other action of a nature referred to in clause (i) above (including involuntary bankruptcy) or seeking issuance of a warrant of attachment, execution, distraint or similar process against all or any substantial part of Tenant's property, which case, proceeding or other action (A) results in the entry of an order for relief or (B) remains undismissed, undischarged or unbonded for a period of ninety (90) days; or (iv) Tenant or Guarantor shall take any action consenting to or approving of any of the acts set forth in clause (i) or (ii) above; or (v) Tenant or Guarantor shall generally not, or shall be unable to, pay its debts as they become due or shall admit in writing its inability to pay its debts.

(i)  Tenant is a corporation (or partnership or limited liability company) and shall cease to exist as a corporation (or partnership or limited liability company) in good standing in the state of its incorporation (or formation) (unless Tenant simultaneously becomes incorporated (or formed) and in good standing in another state) or if Tenant is a partnership or limited liability company or other entity and Tenant shall be dissolved or otherwise liquidated, then, in any such case, if Tenant does not completely remedy such default within the ninety (90) day period following its receipt of written notice of such default.

(j)  Tenant fails or refuses to execute any certificate or agreement that Landlord or Mortgagee may reasonably request confirming the subordination required pursuant to Article 10 or estoppel certificate required pursuant to Article 14 within five (5) Business Days after Landlord's written notice to Tenant of such failure or refusal.

(k)  [DRAFTING NOTE: section remains open and subject to further negotiation and agreement by the parties.]  Any revocation, termination, suspension, decertification or other loss of any Health Care License or Provider Agreement relating to any of the Facilities or health care services provided at or from any of the Facilities or the taking of any action by a Governmental Authority requiring the suspension, closure or inability to operate any Facility in accordance with the Permitted Use.  Notwithstanding the foregoing, in the case of any action referenced above in this paragraph which (i) is temporary and not irrevocable, and (ii) does not require closure of or cessation of operation at a Facility, if Tenant promptly notifies

- 48 -

Landlord and commences and thereafter diligently pursues commercially reasonable and good faith efforts to cure the applicable violations, then such event shall not constitute an Event of Default if Tenant shall, within one hundred eighty (180) days after the action was initially taken, fully cure the applicable violations and restore full use of the Health Care License within one hundred eighty (180) days after the action was initially taken or, if shorter, the time for cure set by the Governmental Authority. (l) [DRAFTING NOTE: *this section remains open and*Landlord and Tenant agree that said 180-day period may be extended by ninety (90) days for a total of two hundred seventy (270) days if Tenant presents to Landlord a Plan of Corrections for each specific violation, which Plan of Correction establishes with reasonable certainty that the violation will be corrected and the revocation, termination, suspension, decertification or other loss of any Health Care License or Provider Agreement will terminate within said 270-day period, which Plan of Correction shall be subject to *further negotiation and agreement by the parties*] the approval of Landlord in its reasonable discretion.

(l)  Any debarment or disqualification of Tenant from being a health care provider, government contractor, holder of any Health Care License or recipient of reimbursement from any Third Party Payor. Notwithstanding the foregoing, in the case of any action referenced above in this paragraph which (i) is temporary and not irrevocable, and (ii) does not require closure of or cessation of operation at a Facility, if Tenant promptly notifies Landlord and commences and thereafter diligently pursues commercially reasonable and good faith efforts to cure the applicable violations, then such event shall not constitute an Event of Default if Tenant shall, within one hundred eighty (180) days after the action was initially taken, fully cure the applicable violations and restore full use of the Health Care License within one hundred eighty (180) days after the action was initially taken or, if shorter, the time for cure set by the Governmental Authority. Landlord and Tenant agree that said 180-day period may be extended by ninety (90) days for a total of two hundred seventy (270) days if Tenant presents to Landlord a Plan of Corrections for such debarment or disqualification, which Plan of Correction establishes with reasonable certainty that the basis for the debarment or disqualification will be corrected and the debarment or disqualification will be reinstated, within said 270-day period, which Plan of Correction shall be subject to the approval of Landlord in its reasonable discretion.

(m)  If at any time during the Term or any extension or renewal thereof, on or after the (4th) fourth Test Date occurring after the Effective Date, the Rent Coverage Ratio is 1.25:1.00 or less for any Test Period, it being the intent of the parties that such event shall constitute an automatic Event of Default without an obligation on the part of Landlord to provide written notice thereof to Tenant. Notwithstanding the foregoing, such Default shall not constitute an Event of Default if (i) within ten (10) Business Days after said Test Date Tenant receives an equity contribution of cash from Guarantor or an Affiliate equal to the amount which, if added to Facility EBITDAR, would result in the Rent Coverage Ratio for that Test Period being greater than 1.25:1.00 and (ii) in the quarter that immediately follows said Test Date, the Rent Coverage Ratio is greater than 1.25:1.00 for such Test Period; provided that Tenant shall be permitted to cure such Default as provided in this Sentence only once during each Lease Year, but no more than five (5) times during the Term. To qualify as an equity contribution of cash satisfying the requirements of this Section, the entire equity so contributed must appear on the financial statements of Tenant as "contributed capital" (or paid in capital or similar term) within the stockholder's equity portion of the balance sheet (it being the intent that there is no

- 49-

corresponding liability reflecting an obligation to repay said amount to the contributor or any third party), and thus be accretive to the solvency of Tenant in accordance with GAAP.

(n)     A default, beyond notice and applicable cure periods, under the Working Capital Loan or any document in connection therewith by a party other than Working Capital Lender.

(o)     A default exists under any other agreement between Tenant or an Affiliate of Tenant and Landlord or an Affiliate of Landlord and such default remains uncured as of the end of the notice and cure period stated in said agreement.

(p)     (i) during any period in which the Guaranty remains in effect, the aggregate of (A) Tangible Net Worth of Tenant plus (B) the Tangible Net Worth of Guarantor is less than the then-applicable Minimum Tangible Net Worth Requirement; or (ii) after the expiration of the Guaranty by its terms, the Tangible Net Worth of Tenant is less than the then-applicable Minimum Tangible Net Worth Requirement. Notwithstanding the foregoing, the occurrence of the foregoing shall not constitute an Event of Default if, in the calendar quarter immediately following said Default, the Tangible Net Worth of Tenant plus (if applicable) the Tangible Net Worth of Guarantor exceeds the Minimum Tangible Net Worth Requirement, provided that Tenant shall be permitted to cure such Default only once during each [successive five (5) Lease Years during the Term and any extension or renewal thereof.] **[DRAFTING NOTE:** *the bracketed language at the end of this section remains open and subject to further negotiation and agreement by the parties*]

**Section 12.2**  Remedies.  Upon the occurrence of an Event of Default, Landlord may, at any time thereafter, without limiting Landlord in the exercise of any right or remedy at law or in equity that Landlord may have by reason of such Event of Default, at its option pursue any one or more of the following remedies without any further notice or demand whatsoever:

(a)     Terminate this Lease and all of the Subleases by issuing written notice of termination to Tenant, in which event Tenant shall immediately surrender the Premises to Landlord, but if Tenant shall fail to do so, Landlord may without notice and without prejudice to any other remedy Landlord may have, peaceably enter upon and take possession of the Premises and expel or remove Tenant and its effects without being liable to prosecution or any claim for damages therefor, and upon any such termination, subject to Section 12.2(b) below, Tenant agrees that in addition to its liability for the payment of arrearages of Base Rent, Supplementary Rent and other sums due and owing by Tenant to Landlord under this Lease upon such termination, Tenant shall be liable to Landlord for damages. Tenant shall pay to Landlord as damages on the same days as Base Rent and other payments which are expressed to be due under the provisions of this Lease, the total amount of such Base Rent and other payments plus a reimbursement for all unamortized tenant allowances and concessions, less such part, if any, of such payments that Landlord shall have been able to collect from a new tenant upon reletting; *provided, however,* that Landlord shall have no obligation to this Tenant to relet the Premises so as to mitigate the amount for which Tenant is liable, except solely as follows: **following** an Event of Default, Landlord shall use commercially reasonable efforts to mitigate its damages, provided, however, that the foregoing shall not be a condition precedent to an action by Landlord against

- 50-

Section 19.1(a) and (b)

possession of the premises with full knowledge of the Environmental Conditions, and (iii) the "As Is" condition referenced in Section 20.16 shall include the Environmental Conditions. Tenant acknowledges and agrees that it hereby waives any claim or remedies against Landlord arising out of or in connection with any of the Environmental Conditions, arising in law or equity, whether by statute, regulation, common law or by agreement other than as specifically provided by this Lease, including but without limitation, for contribution, cost recovery, interference with quiet enjoyment of the Premises, reduction or abatement of Rent, or other damages. The provisions contained in this Section 18.15 shall survive expiration or earlier termination of this Lease, and any transfer of all or a portion of the premises by Tenant or Landlord.

### ARTICLE 19
### FINANCIAL AND REGULATORY REPORTING COVENANTS

**Section 19.1** Reporting, Requirements. Tenant will furnish to Landlord:

(a) Audited Annual Financial Statements. As soon as available, and in any event within ninety (90) days after the end of each applicable fiscal year, beginning with the fiscal year ending December 31 of the calendar year in which this Lease is executed, (i) copies of the annual audited reports for Tenant and of any Trust or Corporate Guarantor containing balance sheets and statements of income, retained earnings, and cash flow as at the end of such fiscal year and for the fiscal year then ended, setting forth in comparative form the figures for the preceding fiscal year, all in reasonable detail and audited and certified on an unqualified basis by a "big four" accounting firm, or any other an independent accounting firm which is reasonably acceptable to Landlord (it being agreed that Gianoli & Company, Inc. initially is approved by Landlord as Tenant's accounting firm, subject to Landlord's right, in its reasonable determination, to subsequently rescind such approval and require an alternate firm), to the effect that such report has been prepared in accordance with GAAP; (ii) copies of the annual personal financial statement for Guarantor, in reasonable detail and containing the review report by an independent accounting firm which is reasonably acceptable to Landlord; and (iii) individual operating statements for each Facility at the Premises. The foregoing shall be complete in all respects and shall include all footnotes, if any.

(b) Unaudited Quarterly Financial Statements. As soon as available, and in any event within forty-five (45) days after the end of each fiscal quarter, (i) copies of unaudited financial reports for Tenant and of any Trust or Corporate Guarantor as of the end of such period and for the portion of the fiscal year then ended containing balance sheets and statements of income, retained earnings, and cash flow, setting forth in comparative form the figures for the corresponding period of the preceding fiscal year, in reasonable detail certified by the chief executive officer, chief financial officer or chief accounting officer of Tenant to have been prepared in accordance with GAAP and to fairly present the financial condition and results of operations of Tenant and of any Trust or Corporate Guarantor at the date and for the periods indicated therein, subject to year-end audit adjustments, (ii) copies of unaudited financial reports for Guarantor as of the end of such period and for the portion of the fiscal year then ended, setting forth in comparative form the figures for the corresponding period of the preceding fiscal year, in reasonable detail certified by the Guarantor to fairly present the financial condition of the

- 70-

Section 21.24(b)

conditioning or delaying consent or approval shall be to seek injunctive relief in accordance with the terms and conditions of this Lease.

**Section 21.22** Power of Attorney. Tenant grants to Landlord an irrevocable power of attorney coupled with an interest for the purpose of (a) exercising during the continuance of an Event of Default any and all rights and remedies available to Tenant under any Sublease, at law or in equity with respect to any such Sublease, any Subtenant or the Premises or Facility thereunder, (b) during the continuance of an Event of Default, executing any agreement, document or instrument as required of Tenant under this Lease, and (c) during the continuance of an Event of Default, performing any of Tenant's other obligations under this Lease. To the extent not prohibited by Applicable Law, Tenant hereby ratifies all acts Landlord has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

**Section 21.23** Counterparts. This Lease may be executed in two or more counterparts (including by means of electronic signatures transmitted by email, facsimile or otherwise), each of which shall constitute an original, and all of which taken together shall constitute one instrument.

**Section 21.24** Guaranty; Tangible Net Worth.

(a) Individual Guaranty. As consideration, in part, for Landlord's willingness to execute this Lease, Landlord has required Tenant to cause Guarantor to deliver to Landlord the guaranty of this Lease in the form attached hereto as **Schedule F**.

(b) Tangible Net Worth Requirement. At all times during the Term, Tenant hereby covenants that the Tangible Net Worth of Tenant and (so long as the Guaranty is in effect) the Tangible Net Worth of Guarantor in the aggregate shall be at least Ten Million and No/Dollars (\$10,000,000.00) (the "**Minimum Tangible Net Worth Requirement**"). The Minimum Tangible Net Worth Requirement shall be subject to adjustment as provided in Section 6.13. As used herein, the term "Tangible Net Worth" means the excess of total assets over total liabilities, {in each case as determined and approved by Landlord,} {**DRAFTING NOTE: the bracketed language remains open and subject to further negotiation and agreement by the parties**} in accordance with GAAP, excluding, however, from the determination of total assets (i) except as provided in this Section, all assets which would be classified as intangible assets under GAAP, including goodwill, licenses, patents, trademarks, trade names, copyrights, and franchises; (ii) any deferred costs paid in advance; (iii) capital lease assets; or (iv) if any Guarantor is an individual, any assets owned (in whole or in part) by such individual's spouse. Landlord's approval referenced herein shall include (without limitation) Landlord's right to approve any appraisal submitted by Tenant in support of the calculation of Tangible Net Worth. For purposes of calculating Tangible Net Worth, assets shall include cash deposits Guarantor pays to the Letter of Credit issuer as collateral for the obligations arising under the Letter of Credit. For purposes hereof, the value of depreciable assets shall be calculated as the fair market value of such assets. Notwithstanding the foregoing, and without violating the Minimum Tangible Net Worth requirement, {if (a) the Rent Coverage Ratio is less than 1.30:1.00 on two (2) consecutive Test Dates, and (b) Tenant demonstrates to the reasonable satisfaction of

- 89-

Landlord that the decline in Rent Coverage Ratio below 1.30:1.00 is due to Medicaid reimbursement delays (for services rendered and approved by those state agencies responsible for making the determination of payment) of more than 90 days, as evidenced by Tenant's Medicaid submissions,] **[DRAFTING NOTE:** *the preceding bracketed text remains open and subject to further negotiation and agreement by the parties*] then Guarantor or an Affiliate of Tenant may loan to Tenant on an unsecured basis up to an aggregate of Two Million and No/Dollars ($2,000,000.00) of Guarantor's Tangible Net Worth for Tenant's use to pay operating cash shortfalls; provided that Tenant repays to the lending party (i.e. Guarantor or said Affiliate) any such loaned amounts with ninety (90) days from the date such funds are received by Tenant from Guarantor.

Section 21.25 Memorandum of Lease. At Tenant's request, the parties shall execute and record in the counties in which the Premises are located a memorandum of lease giving notice of certain non-monetary terms.

## ARTICLE 22
## RESERVED

## ARTICLE 23
## RESERVED

## ARTICLE 24
## RENEWAL

Section 24.1 Option. Provided no Event of Default has occurred which remains uncured either as of the date of Tenant's notice as set forth below or as of the first day of the applicable Extended Term (as hereinafter defined), Tenant shall have the right to extend the term of this Lease for two (2) successive periods of ten (10) years each ("**Extended Term(s)**") with respect to all (but not less than all) of the then current Premises, upon all of the terms and conditions of this Section.

Section 24.2 Notice. Tenant must provide Landlord notice of its exercise of the option for the applicable Extended Term not less than twelve (12) full months prior, but not more than eighteen (18) months prior, to the expiration date of the Term or the first or second Extended Term, as the case may be. Time is of the essence with respect to the foregoing. Tenant may not exercise the option for the second Extended Term unless it exercised the option for, and occupied for the Premises for, the first Extended Term.

Section 24.3 Market Rental Rate. The Base Rent for the first Lease Year of each of the first and second Extended Term shall be at the greater of (i) the prevailing Market Rental Rate as of the first day of the applicable Extended Term and (ii) the Base Rent for the last Lease Year of then-current Term or Extended Term, as further escalated for the first Lease Year of the Extended Term as required by Section 2.1. The Base Rent for each subsequent Lease Year of

- 90-

Schedule D (Definition of "Land")

"**Indebtedness**" of any Person shall mean, without duplication, (a) all items which, in accordance with GAAP, would be included in determining total liabilities as shown on the liability side of the balance sheet of such Person as of the date as of which Indebtedness is to be determined, including any lease which, in accordance with GAAP would constitute Indebtedness, (b) all indebtedness secured by any mortgage, pledge, security, Lien or conditional sale or other title retention agreement to which any property or asset owned or held by such Person is subject, whether or not the indebtedness secured thereby shall have been assumed, (c) all indebtedness of others which such Person has directly or indirectly guaranteed, endorsed (otherwise than for collection or deposit in the ordinary course of business), discounted or sold with recourse or agreed (contingently or otherwise) to purchase or repurchase or otherwise acquire, or in respect of which such Person has agreed to supply or advance funds (whether by way of loan, stock, equity or other ownership interest purchase, capital contribution or otherwise) or otherwise to become directly or indirectly liable.

"**Indemnified Party**" and "**Indemnified Parties**" are defined in Section 11.3.

"**Index**" shall mean the Consumer Price Index for All Urban Consumers, U.S. City Average published by the United States Department of Labor's Bureau of Labor Statistics. If the Bureau of Labor Statistics discontinues publication of the Index, publishes the Index less frequently or alters the Index in any material manner, then Landlord may adopt a substitute index or procedure which reasonably reflects and monitors consumer prices.

"**Initial Base Rent**" is defined in Article A, Section 3.

"**Intellectual Property**" shall mean all rights, priorities and privileges of Tenant relating to intellectual property, whether arising under United States, multinational or foreign laws or otherwise, including, without limitation, copyrights, patents, trademarks, tradenames, any and all applications therefor and licenses relating thereto, and all rights to sue at law or in equity for any infringement or other impairment thereof, including the right to receive all proceeds and damages therefrom.

"**Inter-Creditor Agreement**" is defined in Section 12.15.

"**Interest Expense**" shall mean, for any Test Period, total interest expense (including attributable to Capital Leases in accordance with GAAP) with respect to all outstanding Indebtedness including capitalized interest but excluding commissions, discounts and other fees owed with respect to letters of credit and bankers' acceptance financing and net costs under any interest rate swap, cap or collar agreement or other similar agreement or arrangement designed to hedge the position with respect to interest rates.

"**Land**" means those certain plots, parcels and pieces of real property described on Schedule "A-1" through Schedule "A-24" attached hereto and incorporated herein by this reference, together with the Other Property Rights.

"**Landlord Lien Collateral**" is defined in Section 12.15.

A-109

DM2\8891031.4

12277199v9

Schedule F (Form of Guaranty)

## LEASE GUARANTY

**THIS LEASE GUARANTY** ("Guaranty") is made effective as of _____, 2018, by MARK PETERSEN ("Guarantor"), whose office address is 830 West Trailcreek Drive, Peoria, Illinois 61614, in favor of the entities listed as Landlord on Schedule A-1 through Schedule A-24 attached hereto (individually and collectively, "Landlord"). Landlord's office address is c/o American Healthcare Investors, 18191 Von Karman Avenue, Suite 300, Irvine, CA 92612.

## RECITALS

**WHEREAS,** each Landlord is the owner of the land described on Schedule A-1 through Schedule A-24 (collectively, the "Land") together with the Other Property Rights associated therewith and the Improvements constructed thereon. The terms "Other Property Rights" and "Improvements" and other capitalized terms used but not otherwise defined in this Guaranty shall have the meanings given to such terms in the Lease, as hereinafter defined.

**WHEREAS**, Landlord and POP, LLC, an Illinois limited liability company ("Tenant") have executed that certain Master Lease dated of even date herewith (as hereinafter amended from time to time, the "Lease") pursuant to which Tenant leases the Premises and the Leased Personal Property from Landlord.

**WHEREAS**, for purposes of this Guaranty, the term "Premises" shall mean and refer to the Premises and the Leased Personal Property.

**WHEREAS**, Landlord has required as a condition of its execution of the Lease that Guarantor unconditionally become guarantor and surety to Landlord for all of the obligations of Tenant under the Lease during the original term of the Lease as well as during any renewal term or any extension thereof, and assume primary liability for the performance of the Lease; and

**WHEREAS**, Guarantor desires that Landlord enter into the Lease with Tenant. ]

**NOW, THEREFORE**, incorporating the foregoing recitals herein by reference, in consideration of the Lease of the Premises and of other good and valuable consideration, the receipt of which is hereby acknowledged and to induce Landlord to execute the Lease, Guarantor, intending to be legally bound hereby, agrees as follows:

1.       Guaranty and Suretyship. Guarantor hereby unconditionally and irrevocably becomes guarantor and surety to Landlord, its successors and assigns for the full, faithful and punctual performance of each and all of the covenants, agreements and conditions of the Lease to be kept and performed by Tenant, including the punctual payment of all rent and any other monetary obligations due and owing by Tenant under the Lease (including monetary obligations owing by reason of a non-monetary default by Tenant), whether by acceleration or otherwise, in accordance with and within the time prescribed by the Lease, as well as all other liabilities now or hereafter contracted by Tenant with Landlord, together with all costs and expenses (including

reasonable attorneys' fees and cost of suit) incurred by Landlord in connection with any of the foregoing (hereinafter collectively referred to as the "Liabilities").

2. <u>Representations of Guarantor</u>. Guarantor represents and warrants that at the time of the execution and delivery of this Guaranty and throughout the term of this Guaranty:

(a) Guarantor has the requisite power and authority to make and perform this Guaranty.

(b) nothing exists to impair the effectiveness of the obligations of Guarantor to Landlord hereunder.

(c) the financial statements of Guarantor furnished to Landlord in connection with this Guaranty are: (i) true, correct and complete in all material respects; (ii) have been prepared in accordance with generally accepted accounting principles consistently applied; and (iii) present fairly the financial condition of Guarantor as of the respective dates thereof. No material adverse change has occurred in the financial condition of Guarantor since such dates.

(d) Guarantor will furnish Landlord with the financial statements of Guarantor and other information specified in Section 19(a) and Section 19(b) of the Lease in the form and within the time frames required by said Article. Landlord shall be permitted to rely upon the accuracy and completeness of the item furnished pursuant to this paragraph and the Lease and to disclose and publish the same as required by Applicable Laws. Without limiting the generality of the foregoing, Guarantor acknowledges that Landlord is a subsidiary of a Real Estate Investment Trust and that, as such, it is subject to certain filing and reporting requirements in accordance with federal laws and regulations, including but not limited to, regulations promulgated by the Securities and Exchange Commission. Accordingly, and notwithstanding any provision of this Guaranty, the Lease or the provisions of any other existing agreement between the parties hereto to the contrary, Guarantor acknowledges that Landlord may publicly file, disclose, report or publish any and all information related to the Lease and this Guaranty that may be reasonably interpreted as being required by federal law or regulation after Closing.

(e) Guarantor is not in default under any agreement, the effect of which could materially and adversely affect performance of its obligations under this Guaranty. There are no actions, suits or proceedings pending or, to the best of its knowledge, threatened against the Guarantor before any court or any other governmental authority of any kind which could materially and adversely affect performance of its obligations under this Guaranty.

(f) Except as expressly provided in this Guaranty, Guarantor shall not assign the liabilities and obligations created under this Guaranty without the prior written consent of Landlord, which consent Landlord may withhold in its sole and absolute discretion. Notwithstanding the foregoing, Guarantor may, with the prior written consent of Landlord, which consent shall not be unreasonable withheld, on one (1) occasion assign the liabilities and obligations created under this Guaranty to a trust created for the benefit of Guarantor and controlled solely by Guarantor ("**Trust**") or to a corporation, partnership or limited liability company owned and controlled (with the term "control" having the meaning given to such term in this <u>Section 9.1</u>) solely by Guarantor ("**Corporate Guarantor**"), provided that such Trust or

Corporate Guarantor satisfies the financial covenants set forth in <u>Section 3</u> below, as well as the following criteria: (i) the results of a background and credit check on the assignee, its officers, directors, owners and principals are reasonably acceptable to Landlord, (ii) verification to the reasonable satisfaction of Landlord of no prior history on the part of said persons and entities or their respective affiliates of a revocation, termination, suspension, decertification or other loss of any Health Care License or Provider Agreement, (iii) verification to the reasonable satisfaction of Landlord that neither said assignment nor the proposed assignee Trust or Corporate Guarantor is reasonably likely to materially and adversely affect the status of Landlord or any of its Affiliates as a REIT, or to cause the rent paid hereunder to fail to qualify as "rents from real property" within the meaning of Section 856(d) of the Code, and (iv) Landlord reasonably determines that the assignee is capably of complying with the obligations under <u>Section 19.3</u> of the Lease.  Upon (i) such assignment with Landlord's written consent to a Trust or Corporate Guarantor, and (ii) the written assumption by such Trust or Corporate Guarantor of the Liabilities and obligations under this Guaranty, the initial Guarantor shall be remised, released and discharged from any and all Liabilities and obligations under this Guaranty.  In the written assumption, Trust or Corporate Guarantor (as applicable) shall represent, warrant and covenant to Landlord as of the date thereof: (i) the type of its legal entity, (ii) the state of its formation, (iii) its valid existence and good standing under the law of its state of formation, (iv) with respect to a Corporate Guarantor, that Guarantor is owned and controlled only by Mark Petersen, the Guarantor hereunder, and that there will not be a change of such ownership or control without the prior written consent of Landlord, which consent Landlord may withhold in its sole and absolute discretion, (v) with respect to a Trust, that Mark Petersen is the sole trustee thereof and that the sole beneficiary under the trust is limited to natural persons who are the spouse or descendants of Mark Peterson, and that there will not be a change of such trustee or beneficiaries without the prior written consent of Landlord, which consent Landlord may withhold in its sole and absolute discretion.   As a condition to giving its consent to such assignment to a Trust of Corporate Guarantor, it will be reasonable for Landlord to require evidence demonstrating the authority of Trust of Corporate Guarantor, along with those signing on their behalf, to execute and deliver such assumption.

Guarantor (including any Trust or Corporate Guarantor serving as a successor Guarantor) hereby covenants that there shall not be a direct or indirect change of ownership or control of Guarantor (including, without limitation, a change of ownership or control of a direct or indirect constituent owner of Guarantor) without the prior written consent of Landlord, which consent Landlord may withhold in its sole discretion.  For purposes hereof, the term "change of ownership or control" shall include, without limitation, (i) a change of the direct or indirect power to direct or to cause the direction of, the management and policies of any person or entity, whether through the ownership of voting securities, or partnership, membership or other equity interests, by contract or otherwise, (ii) the pledge, hypothecation, encumbrance or transfer of any interest in an entity, or (iii) the merger or consolidation of such entity by, with or into another entity.  If a new management company is formed to provide such services in connection with the Facilities and all other health care facilities of every type now or hereinafter owned and/or operated by Tenant, the Operating Subtenants, Guarantor and their respective Affiliates, then such management company shall become a co-guarantor under this Guaranty pursuant to a written agreement in form and substance acceptable to Landlord in its reasonable discretion, and the failure to do so within five (5) Business Days after written notice to Tenant shall constitute an automatic Event of Default under the Lease and a default under this Guaranty.

3.    <u>Covenants of Guarantor</u>.

(a)    At all times during the Term, Guarantor hereby covenants that the Tangible Net Worth of Tenant and (so long as this Guaranty is in effect) the Tangible Net Worth of Guarantor in the aggregate shall be at least Ten Million and No/Dollars ($10,000,000.00) (the "**Minimum Tangible Net Worth Requirement**").  The Minimum Tangible Net Worth Requirement shall be subject to adjustment as provided in <u>Section 6.13</u> of the Lease  As used herein, the term "<u>Tangible Net Worth</u>" means the excess of total assets over total liabilities, in each case as determined and approved by Landlord, in accordance with GAAP, excluding, however, from the determination of total assets (i) except as provided in this Section, all assets which would be classified as intangible assets under GAAP, including goodwill, licenses, patents, trademarks, trade names, copyrights, and franchises; (ii) any deferred costs paid in advance; (iii) capital lease assets; or (iv) if any Guarantor is an individual, any assets owned (in whole or in part) by such individual's spouse.  Landlord's approval referenced herein shall include (without limitation) Landlord's right to approve any appraisal submitted by Tenant in support of the calculation of Tangible Net Worth.   For purposes of calculating Tangible Net Worth, assets shall include cash deposits Guarantor pays to the Letter of Credit issuer as collateral for the obligations arising under the Letter of Credit.   For purposes hereof, the value of depreciable assets shall be calculated as the fair market value of such assets.  It shall be an automatic default of the Guaranty and this Lease if the Tangible Net Worth of Guarantor is less than the Minimum Tangible Net Worth Requirement.  Notwithstanding the foregoing, and without violating the Minimum Tangible Net Worth requirement, if (a) the Rent Coverage Ratio is less than 1.30:1.00 on two (2) consecutive Test Dates, and (b) Tenant demonstrates to the reasonable satisfaction of Landlord that the decline in Rent Coverage Ratio below 1.30:1.00 is due to Medicaid reimbursement delays (for services rendered and approved by those state agencies responsible for making the determination of payment) of more than 90 days, as evidenced by Tenant's Medicaid submissions, then Guarantor or an Affiliate of Tenant may, but shall not be obligated to, loan to Tenant on an unsecured basis up to an aggregate of Two Million and No/Dollars ($2,000,000.00) for Tenant's use to pay operating cash shortfalls; provided that Tenant repays to the lending party (i.e. Guarantor or said Affiliate) any such loaned amounts with ninety (90) days from the date such funds are received by Tenant;

(b)    Notwithstanding anything in this Guaranty or the Lease to the contrary, the maximum liability of Guarantor under this Guaranty shall be limited (the "**Guaranty Cap**") to Fifteen Million and No/100 Dollars ($15,000,000.00).

4.    <u>Landlord's Rights to Amend Lease, etc.</u>  Landlord shall have the right from time to time, and at any time in its sole discretion, without notice to or consent from Guarantor, or without affecting, impairing, or discharging in whole or in part, any of the Liabilities of Guarantor hereunder, to modify, change, extend, alter, amend, or supplement in any respect whatever, the Lease, or any agreement or transaction between Landlord and Tenant or between Landlord and any other party liable for the Liabilities, or any portion thereof; to grant extensions of time and other indulgences of any kind to Tenant; to compromise, release, substitute, exercise, enforce or fail to refuse to exercise or enforce any claims, rights or remedies of any kind which Landlord may have at any time against Tenant or any other party liable for the Liabilities, or any

part thereof, or with respect to any security of any kind held by Landlord at any time under any agreement or otherwise. The obligations of Guarantor hereunder shall not be affected, impaired or discharged, in whole or in part, by reason of payments by Tenant of all or any portion of the Liabilities, which payments shall be turned over as "voidable preferences" or otherwise disgorged, or by reason of any action whatsoever taken by Landlord, including any sale, lease, disposition, liquidation or other realization (which may be negligent, willful or otherwise with respect to any security in which Landlord may at any time have any interest or against any other party liable for all or any part of the Liabilities).

4.     WAIVERS, ETC.  GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES:  (A) ANY NOTICES AND DEMANDS, INCLUDING: (I) NOTICE OF ACCEPTANCE OF THIS GUARANTY; (II) NOTICE OF PRESENTMENT, DEMAND FOR PAYMENT, NOTICE OF DEFAULT, OR PROTEST OF ANY LIABILITIES, OR THE OBLIGATION OF ANY PERSON, FIRM, OR CORPORATION HELD BY LANDLORD AS COLLATERAL SECURITY; (III) ANY NOTICES OF THE FINANCIAL CONDITION OF TENANT OR OF ANY ADVERSE OR OTHER CHANGE IN THE FINANCIAL CONDITION OF TENANT; AND (IV) ANY NOTICES OF THE EXISTENCE, CREATION, OR INCURRING OF NEW OR ADDITIONAL OBLIGATIONS; (B) OFFSETS AND COUNTERCLAIMS WHICH GUARANTOR MAY AT ANY TIME HAVE TO ANY OF THE LIABILITIES, INCLUDING: (I) ANY DEFENSES BASED ON THE TERMINATION OF TENANT'S LIABILITY FROM ANY CAUSE; AND (II) ANY DEFENSES BASED UPON THE NEGLIGENCE OF THE LANDLORD IN ADMINISTERING THE LEASE, OR TAKING OR FAILING TO TAKE ANY ACTION IN CONNECTION THEREWITH; (C) TRIAL BY JURY AND THE RIGHT THERETO IN ANY PROCEEDING OF ANY KIND, WHETHER ARISING ON OR OUT OF, UNDER, OR BY REASON OF, THIS GUARANTY, OR ANY OTHER AGREEMENT OR TRANSACTION BETWEEN GUARANTOR, LANDLORD AND/OR TENANT; (D) THE BENEFIT OF ALL APPRAISEMENT, VALUATION, MARSHALING, FORBEARANCE, STAY, EXTENSION, REDEMPTION, HOMESTEAD, EXEMPTION OR MORATORIUM LAWS NOW OR HEREAFTER IN EFFECT AND ANY STATUTE OF LIMITATIONS AFFECTING GUARANTOR'S LIABILITY UNDER THIS GUARANTY; (E) ALL DILIGENCE IN THE COLLECTION OF ANY OF THE LIABILITIES; (F) ANY RIGHT TO REQUIRE LANDLORD TO (I) PROCEED AGAINST TENANT; (II) PROCEED AGAINST OR EXHAUST ANY SECURITY THAT LANDLORD HOLDS FROM TENANT; OR (III) PURSUE ANY OTHER REMEDY IN LANDLORD'S POWER; (G) ANY RIGHT, CLAIM OR ACTION THAT IT MAY NOW OR HEREAFTER HAVE AGAINST TENANT ARISING OUT OF, OR IN CONNECTION WITH, GUARANTOR'S OBLIGATIONS UNDER THIS GUARANTY OR THE PAYMENT OR PERFORMANCE BY GUARANTOR OF ALL OR ANY PART OF THE LIABILITIES, INCLUDING ANY RIGHT OR CLAIM FOR SUBROGATION, CONTRIBUTION, REIMBURSEMENT, EXONERATION, OR INDEMNITY; AND (H) ANY RIGHTS TO PARTICIPATE IN ANY SECURITY NOW OR LATER HELD BY LANDLORD.

5.     Assignment of Guaranty.  Landlord may, without notice, but only in connection with an assignment of the Lease, assign this Guaranty in whole or in part, and no assignment of this Guaranty or assignment or transfer of the Lease or subletting of the Premises shall operate to extinguish or diminish the liability of Guarantor hereunder.  Guarantor may not assign this

Guaranty or delegate its obligation hereunder without the prior written consent of Landlord, which consent may be withheld in Landlord's sole discretion.

6. <u>Primary Liability of Guarantor</u>.  The liability of Guarantor under this Guaranty shall be primary and not secondary and Landlord may, at its option, proceed directly against Guarantor or any security granted to Landlord without having to commence any action, or having obtained any judgment against Tenant.

7. <u>Insolvency of Tenant</u>.  All of the Liabilities and the obligations of Guarantor hereunder shall be immediately due and payable by Guarantor, anything contained herein to the contrary notwithstanding, immediately upon an Event of Default with respect to Tenant under Section 12(g) of the Lease, whether or not Landlord has exercised any option which it may have to require payment in full or acceleration of payment of the Liabilities from any other person liable for payment of the Liabilities.

8. <u>Governing Law/Consent to Jurisdiction/Venue</u>.  Irrespective of the place of execution and/or delivery of this Guaranty or the location of the Premises, this Guaranty shall be governed by and shall be construed in accordance with, the Applicable Laws of the State or States in which the Premises are located applicable to agreements entered into without regarding to conflicts of law principles.  Landlord and Guarantor hereby consent and submit to the exclusive jurisdiction of the state and Federal courts located in the state in which the Premises are located with respect to any claim or litigation arising hereunder or any alleged breach of the covenants or provisions contained herein, and acknowledge that proper venue in any matter so claimed or litigated shall be in the state and Federal courts located in which the Premises are located; *provided*, *however,* that (1) Landlord shall be permitted, in addition, if required by Applicable Law in the jurisdiction where the Premises are located, to bring any action against Guarantor and/or to enforce this Guaranty in the jurisdiction where the Premises are located and (2) Guarantor shall be permitted, in addition, if required by Applicable Law in the jurisdiction where the Premises are located to bring any action against Landlord and/or to enforce this Guaranty in the jurisdiction where the Premises are located.

9. <u>No Impairment of Obligations</u>.  The obligations of Guarantor hereunder shall not be affected, modified, changed, amended, limited, impaired, released or discharged, in whole or in part, by reason of: (a) the entry of an order for relief pursuant to the United States Bankruptcy Code by or against Tenant or Guarantor; (b) the modification, change, amendment, limitation, impairment or release of the liability of Tenant or its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provision of the U.S. Bankruptcy Code, or from the decision of any federal, state or local court; (c) the proposal or confirmation of a plan of reorganization concerning Tenant or Guarantor or by any rejection of the Lease pursuant to any such proceeding; (d) except as otherwise provided for in the Lease the assignment of Tenant's obligations pursuant to: (i) the Lease; (ii) an order of court; or (iii) by operation of law.

10. <u>Limitation of Waivers by Landlord</u>.  The waiver of any right by Landlord or its failure to exercise promptly any right shall not be construed as the waiver of any other right, including the right to exercise the same at any time thereafter.  No waiver or modification of any

12573432v2

of the terms or conditions of this Guaranty shall be binding against Landlord unless such waiver or modification is in a writing signed by Landlord.

11.  <u>Binding Effect</u>.  The provisions of this Guaranty shall bind all of the respective heirs, executors, administrators, legal representatives, successors and assigns of Guarantor and shall inure to the benefit of Landlord, its successors and assigns.

12.  <u>Remedies Cumulative</u>.  All rights and remedies of Landlord hereunder and under the Lease are cumulative and may be pursued simultaneously or in whichever order Landlord shall determine.

13.  <u>Terms</u>.  Each capitalized term not specifically defined in this Guaranty shall have the same meaning as is ascribed to it in the Lease.  As used herein, and when required by the context, each number (singular and plural) shall include all numbers, and each gender shall include all genders; and unless the context otherwise requires, the word "person" or "party" shall include "individual, corporation, company, firm, partnership or association."

14.  <u>Multiple Guarantors; Joint and Several Liability</u>.  If less than all persons who were intended to sign this Guaranty do so, the same shall nevertheless be binding upon those who do sign and if one person shall sign, all plural references shall be read as singular.  If Guarantor consists of more than one person or entity, the obligations of such persons and entities hereunder shall be joint and several.  A separate action may be brought or prosecuted against any Guarantor whether the action is brought or prosecuted against any other Guarantor or Tenant, or all, or whether any other Guarantor or Tenant, or all, are joined in the action.  Landlord may compromise or settle with any one or more of Guarantors for such sums, if any, as it may see fit and may in its discretion release any one or more of Guarantors from any further liability to Landlord without impairing, affecting or releasing the right of Landlord to proceed against any one or more of Guarantors not so released.

15.  <u>Notices</u>.  Any notice or demand given or made under this Guaranty shall be given or made by mailing the same by certified mail to the party to whom the notice or demand is given or made at the address of such party set forth in this Guaranty as may be changed by written notice from time to time.

16.  <u>Landlord's Remedies</u>.  Landlord may exercise all of its rights and remedies hereunder immediately upon the occurrence of a default beyond all applicable notice, grace and cure periods expressly stated in the Lease or this Guaranty.

17.  Termination of Guaranty.  Provided that no Default exists under the Lease, as certified by Tenant and Guarantor in writing to Landlord, this Guaranty shall terminate thirty (30) days after the date on which one of the following conditions is satisfied:

a.  Tenant delivers to Landlord written notice stating that the Tangible Net Worth of Tenant, as determined and approved by Landlord in accordance with the terms of <u>Section 21.24(b)</u> of the Lease, is and for a period of at least six (6) consecutive calendar months has been, in excess of the Minimum Tangible Net Worth Requirement; or

   b.  On a date following the second anniversary of the Lease Effective Date, (i) Tenant delivers to Landlord an amendment to or replacement of the Letter of Credit with an LC Amount (exclusive of adjustments thereto required by the terms of Section 6.13 of the Lease) equal to the product obtained by multiplying the then-applicable monthly Base Rent by twelve (12), and (ii) on the date said replacement to or amendment of the Letter of Credit is delivered to Landlord, the Tangible Net Worth of Tenant is, and for the preceding six (6) calendar months has been, at least equal to the positive difference between $8.5 million and said 12-month LC Amount (e.g. if the then adjusted LC Amount for twelve (12) months of Base Rent equals $7 million, then said Tangible Net Worth of Tenant must be at least $1.5 million, being the difference between $8.5 million and $7 million).

   Guarantor's signature follows on the next page.

IN WITNESS WHEREOF, Guarantor has set Guarantor's hand and seal hereto on of the date first above written.

GUARANTOR:

_____

MARK PETERSEN

STATE OF ILLINOIS      )
                                 ) SS.
COUNTY OF _____  )

I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that MARK PETERSEN, personally known to me to be the same person whose name is subscribed to the above and foregoing instrument, appeared before me this day in person and acknowledged that he has signed and delivered the said instrument as his free and voluntary act as aforesaid, for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this ____ day of _____, 2018.

_____
                        Notary Public

My commission expires:_____

[affix notary seal below]

Schedule F (Form of Guaranty)

**SCHEDULE A-1**

Facility Name:

Facility Address:

Legal Description:

Permitted Exceptions:  The matters affecting title to the Premises which are in effect as of the Commencement Date, as follows:

**[DRAFTING NOTE: Schedules A-2 through A-24 to be added]**